PARK TERRACE, INC., v. PHOENIX INDEMNITY COMPANY (ORIGINAL DEFENDANT) AND PARK BUILDERS, INC. (ADDITIONAL DEFENDANT).

(Filed 4 February, 1955.)

**1. Principal and Surety § 8: Pleadings § 31—**

In an action upon a builder's performance bond to recover for alleged defective materials and improper workmanship, allegations to the effect that the architect responsible for the construction of the project had certified that all work had been completed in accordance with the terms of the contract, are relevant and material, and motion to strike such allegations from the pleadings is correctly denied.

**2. Appeal and Error § 6c (1)—**

Where the court enters an order striking certain paragraphs from the pleadings and likewise denying motion to make an additional party defendant, an exception particularizing objection solely to so much of the order as strikes the paragraphs, does not support an assignment of error to the refusal to make the additional party defendant.

**3. Corporations § 20—Corporation not bound by agreement of individual made with individual shareholders in purchasing their stock.**

Plaintiff corporation owned certain lands and executed a contract with a corporate builder for the construction of certain apartment buildings thereon. After the completion of the buildings, an individual, who had no previous connection with plaintiff corporation, purchased all its common

stock from the individual stockholders, and executed an agreement with vendors that no claim should be asserted against them or the building corporation for improper workmanship or defective materials in the construction of the apartments. *Held:* The individual purchasing the stock could not bind plaintiff corporation by the contract of release, since at the time of making the agreement he was neither stockholder, officer, director nor employee of the corporation, and allegations that he was acting in behalf of plaintiff corporation and had authority to execute the agreement are mere conclusions of the pleader.

### 4. Principal and Surety § 8: Pleadings § 31—

In an action by a corporation on a builder's performance bond, allegations in defendants' answers setting up a release from liability for improper workmanship and defective materials, executed by an individual in purchasing all of the common stock of the corporation from its individual stockholders after the completion of the buildings, are properly stricken on motion when the release contract is not binding on the corporation.

### 5. Corporations § 21: Principal and Agent § 7d—

Where an individual does not purport to be acting for a corporation in executing a contract, the question of corporate ratification of his acts cannot arise.

### 6. Corporations § 20—

A corporation is bound by the acts of its stockholders and directors only when they act as a body in regular session or under authority conferred at a duly constituted meeting.

### 7. Principal and Surety § 8: Parties § 3—Individual executing release agreement not binding on corporation held not necessary party in corporation's action on builder's performance bond.

Plaintiff corporation owned certain lands and executed a contract with a corporate builder for the construction of certain apartment buildings thereon. Sometime after the completion of the buildings, the owners of all of the common stock of plaintiff corporation sold same to an individual by contract under which the purchaser of the stock agreed that no claim should be asserted against the sellers of the stock or the building corporation for improper workmanship or defective materials. *Held:* In an action by the plaintiff corporation on the builder's performance bond, the individual purchaser of the stock is not a necessary party, the corporation not being bound by the release contract.

### 8. Pleadings § 22b—

Where the trial court correctly declines to join an additional party defendant, denial of a motion to amend for the purpose of making allegations against such party is without error.

### 9. Same—

A motion to be allowed to amend is addressed to the discretion of the trial judge, and his action in declining to grant leave to amend is not reviewable.

BOBBITT, J., dissenting.

JOHNSON, J., concurs in dissent.

APPEAL by defendants from *Phillips, J.,* September Term, 1954, FORSYTH.

Civil action to recover damages for breach of building contract, heard on motion by plaintiff to strike allegations in defendants' further answers and motion of defendants to make M. P. McLean an additional party defendant and for leave to amend their answers.

On 12 October 1949 plaintiff entered into a contract—FHA Form No. 2442-M—with Park Builders, Inc. for the construction of certain apartment buildings and facilities on lands owned by the plaintiff. Park Builders, as a part of the contract, executed and delivered to plaintiff a performance bond known in the building trade as "Federal Housing Administration Contract Bond—Dual Obligee." Defendant Phoenix Indemnity Company, hereinafter referred to as Indemnity Company, executed this bond as surety. At that time W. B. Pollard, R. G. Burge, and Lawson Lester, Jr., owned 199 of the 300 outstanding shares of common stock of plaintiff, and J. A. Bolich, Jr. owned the remaining 101 shares. FHA owned the 100 shares—par value of $1.00 per share—of outstanding preferred stock of plaintiff.

On 15 February 1951, Malcolm P. McLean, Jr. acquired the 199 shares of Class A common stock of plaintiff from Pollard, Burge, and Lester, who were at that time also the directors and officers of Park Builders. On the same date McLean contracted to purchase from Bolich the remaining 101 shares of Class A common stock of plaintiff.

As a part of the contract of purchase and sale and as a consideration therefor, McLean executed and delivered to Pollard, Burge, and Lester, a contract which contained a provision as follows:

"The purchaser agrees, and has by this contract accepted the real estate and all improvements located thereon which is owned by the corporation in its present condition, and agrees that no claim shall be made against the parties of the first part (Pollard, Burge, and Lester) individually or against Park Builders, Inc., or J. A. Bolich, Jr., of any nature whatsoever because of defective workmanship, defective or inferior building materials in the structures located on said premises, and also because of any breakage or wear and tear that has heretofore occurred to any of the structures or fixtures located in said structures, it being definitely understood and agreed that the premises and all structures erected thereon and fixtures attached thereto are accepted in their present condition, and no guarantee of their conditions is made by the parties of the first part, Park Builders, Inc., or J. A. Bolich, Jr."

Two years and ten months after the transfer of said stock and the execution of said agreement, plaintiff instituted this action for damages for breach of the construction contract by Park Builders for improper workmanship, the use of defective materials, and in other respects it is unneces-

sary to detail. The action was originally instituted against the surety on performance bond only. On motion of Indemnity Company, Park Builders was made an additional party defendant.

The defendants filed separate answers in which they denied the material allegations contained in the complaint and pleaded as a further defense and bar of the claim of the plaintiff the agreement entered into by McLean at the time he acquired the common stock of plaintiff.

In paragraph 1 of the further answers each defendant alleges in part: ". . . and Lief Valand, the Architect responsible for the construction of the project under the provisions of said contract, certified to the Federal Housing Administration that said work in progress during the construction of the project, and all work as finally completed, was performed and completed in accordance with the terms of said contract including the plans, specifications, and drawings as said requirements . . ."

In the second paragraph of their further answers, the defendants plead the contract of release above quoted and allege that said contract is a bar to plaintiff's right to recover herein. Paragraph 3 of said further answers is as follows:

"3. The defendant, Park Builders, Inc., alleges that in executing and delivering said contract and release, set out in paragraph 2 of this Further Answer and Defense, Malcolm P. McLean, Jr., was acting in behalf of and as agent of the plaintiff; that he had authority to so act and that the plaintiff, as principal, is bound by the acts of the said Malcolm P. McLean, Jr., in executing and delivering said contract to this defendant, Park Builders, Inc."

On 17 March 1954 plaintiff filed a motion before the clerk of the Superior Court to strike paragraphs 2 and 3 and that part of paragraph 1 above quoted of defendants' further answer and defense. The clerk, on hearing the motion, entered an order striking the quoted excerpt of paragraph 1 and declining to strike paragraphs 2 and 3. When the cause came on for hearing before the judge on appeal from the clerk, the judge entered an order denying the motion to strike the excerpt from paragraph 1 of said further answers and striking paragraphs 2 and 3. He likewise denied the motion of defendants to make McLean an additional party defendant and for leave to amend their further answers. Both plaintiff and defendants excepted and gave notice of appeal. The appeal was perfected only by the defendants.

*Spry & White and Dallace McLennan for plaintiff appellee.*

*Brooks, McLendon, Brim & Holderness for original defendant appellant, and Womble, Carlyle, Martin & Sandridge and Broaddus, Epperly & Broaddus for additional defendant appellant.*

BARNHILL, C. J.   There was no error in the order of the court below declining to strike the quoted excerpt from the further answers of the defendants.  It was the duty of the architect in charge to exercise general supervision of the construction of the buildings contemplated by the building contract for the purpose of determining whether the builder was furnishing the type of building material and constructing the buildings in accordance with the plans and specifications.  Consequently, the defendants will have the right to offer competent evidence in support of the allegation.  Hence, inclusion of said allegation is neither irrelevant nor immaterial.

The appellants discuss in their brief the alleged error of the court below in declining to make McLean a party defendant.  But there is no exception to sustain this assignment.  Upon the signing of the order from which the defendants appealed, they elected to particularize their objections to the order in the following language: "The defendants . . . each excepts separately to so much of the foregoing order as strikes paragraphs 2 and 3 of their respective further answers and defenses, and the judgment entered, and each appeals to the Supreme Court."  Thus the defendants, at the time, elected to direct their attack upon the order to so much thereof as struck paragraphs 2 and 3.  They did not except to the refusal of the court to make McLean a party defendant.  *Currie v. Malloy,* 185 N.C. 206, 116 S.E. 564.  And, in any event, the refusal of the court to make McLean a party defendant was well advised.  The purchase of the outstanding common stock from the then owners thereof was by McLean as an individual.  He signed the so-called release as an individual.  Hence, these defendants may not be permitted to try any action they may have against McLean in this suit.

The so-called release executed at the time and as a part of the contract of purchase and sale was executed by the then owners as parties of the first part and by McLean as the party of the second part, as individuals. Neither the vendors nor the vendee purported to act for the corporation.

While it is alleged that McLean, in executing the release, "was acting in behalf of and as agent of the plaintiff; that he had authority to so act and that the plaintiff, as principal, is bound by the acts of the said Malcolm P. McLean, Jr., in executing and delivering said contract to Park Builders, Inc.," the other specific facts alleged completely refute this allegation and make it nothing more than a conclusion.  At the time McLean signed the release contract, he was not a stockholder, director, or officer of plaintiff corporation, and there is no allegation that he was an employee possessing any authority whatsoever to act in behalf of plaintiff.

Since McLean, in executing the release contract, did not purport to act as an agent of plaintiff, the question whether he had authority to act in behalf of that corporation does not arise.  That question does not arise

until and unless he professes to contract for and in behalf of his alleged principal. *Air Conditioning Co. v. Douglass, ante,* 170.

A corporation is bound by the acts of its stockholders and directors only when they act as a body in regular session or under authority conferred at a duly constituted meeting. "As a rule authorized meetings are prerequisite to corporate action based upon deliberate conference, and intelligent discussion of proposed measures." *O'Neal v. Wake County,* 196 N.C. 184, 145 S.E. 28; *Tuttle v. Building Corp.,* 228 N.C. 507, 46 S.E. 2d 313, and cases there cited.

"The separate action, individually, without consultation, although a majority in number should agree upon a certain act, would not be the act of the constituted body of men clothed with corporate powers." Angel & Ames on Corporations, sec. 504. "Indeed, the authorities upon this subject are numerous, uncontradicted, and supported by reason." *Duke v. Markham,* 105 N.C. 131; *Tuttle v. Building Corp., supra,* and cases there cited; 13 A.J. 465; 3 Fletcher, Cyc. of Corporations, 2917; Ballentine, Manual of Corporation Law and Practice, 591.

It is apparent that at the time McLean acquired the stock of plaintiff corporation, the vendors were under the impression they might be liable individually in an action for breach of the building contract and were seeking to protect themselves against a suit for such breach. It would seem, therefore, that the release contract was made a part of the purchase and sale of the stock primarily for the protection of the vendors. In any event, the action of McLean in becoming a party to said contract was not binding upon plaintiff corporation. Whether Park Builders, Inc. has a cause of action against the vendors of the stock under said release contract will be determined by the verdict and judgment in this cause. If plaintiff recovers herein, Park Builders, Inc. may then assert its rights, if any, under said release contract.

McLean is not a necessary party to this action. The rights of plaintiff may be fully litigated without making him either a party plaintiff or defendant. The action of the court in declining to make him a party defendant cannot be held for error. The motion of the defendants for leave to amend their answers was interposed for the purpose of making allegations against McLean. Since McLean was not made a party, the motion to amend is clearly without merit. In any event, it was a matter of discretion resting in the presiding judge. His action in declining to grant leave to amend is not reviewable. *Hooper v. Glenn,* 230 N.C. 571, 53 S.E. 2d 843; *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398.

Query: Since McLean has acquired all the stock of plaintiff, is it now a corporation? This question is not presented by this record.

The judgment entered in the court below is
Affirmed.

BOBBITT, J., dissenting: In considering plaintiff's motion to strike, we deal with *the facts alleged*.

On 15 February, 1951, Pollard, Burge and Lester owned 199 shares of plaintiff's common stock. Bolich owned the remaining 101 shares. Pollard, Burge and Lester owned common stock of defendant Park Builders, Inc. They were interested, as stockholders, in both corporations. This was the state of affairs when McLean purchased the 199 shares from Pollard, Burge and Lester, and the 101 shares from Bolich.

The release was signed by McLean. It was executed as recited therein, "as a part of the consideration for the purchase of said stock." It provides that McLean "accepted the real estate and all improvements located thereon . . . owned by the corporation in its present condition." The release, by its terms, is in favor of defendant Park Builders, Inc., as well as in favor of Pollard, Burge and Lester.

On 15 February, 1951, claims, if any, against Park Builders, Inc., "of any nature whatsoever because of defective workmanship, defective or inferior building materials in the structures located on said premises," vested in Park Terrace, Inc., the plaintiff. When McLean purchased the 199 shares of common stock in plaintiff he agreed, as expressly provided in the release, that no claim of this nature would be made against Park Builders, Inc.

The plaintiff, a corporate entity, neither received nor gave a consideration. But McLean became its sole common stockholder in consideration of his execution of the release. It is clear that McLean individually is precluded by his express agreement from asserting any claim against defendant Park Builders, Inc., or the surety on its bond, or Pollard, Burge and Lester, of any nature whatsoever because of defective workmanship or defective or inferior building materials in the structures located on said premises. The question for decision is whether, upon the facts alleged, Park Terrace, Inc., can assert such claims.

It is alleged that on 15 February, 1951, McLean became, and presently is, the owner of said 300 shares, the entire common stock of plaintiff; and that the only other stock outstanding is the 100 shares of preferred stock, having a par value of $1.00 per share, owned by the Federal Housing Administration.

The release is pleaded as a bar to plaintiff's action. The case has been presented as turning upon the question as to whether the release is to be considered the contract of the plaintiff, the contention being that McLean acted as agent for the plaintiff and by virtue of his authority as sole common stockholder. However, we consider the facts as alleged; and it is for this Court to pass upon the legal significance of the allegations. In so doing, we approach the question not to determine whether the release is in fact or in law the corporation's contract but rather to determine

whether McLean can maintain under the guise of a corporation suit an action for his benefit as sole owner of the plaintiff's common stock.

A corporation is an entity, distinct from its stockholders, although one individual owns its entire stock, or all but qualifying shares held by directors, 1 Fletcher, Cyc. of Corporations, sec. 25; 18 C.J.S., Corporations, sec. 4.

Too, as stated in the opinion of the Court, "a corporation is bound by the acts of its stockholders and directors only when they act as a body in regular session or under authority conferred at a duly constituted meeting." *Duke v. Markham,* 105 N.C. 131, 10 S.E. 1017; *Tuttle v. Building Co.,* 228 N.C. 507, 46 S.E. 2d 313. These principles are well settled in this jurisdiction. Nothing said herein is intended to indicate that I would modify or impair the authorities cited.

But a corporation should not be permitted to serve as a device, instrument or agency to enable its beneficial owners, the stockholders, to accomplish by indirection that which their solemn covenant forbids.

*Sanborn, J.,* in a statement often quoted, says: "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." *United States v. Milwaukee Refrigerator Transit Co.,* 142 Fed. 247; see 18 C.J.S., Corporations, secs. 6 and 7.

And Fletcher, op. cit., sec. 41, citing authorities, gives this summation: "A classification of the evidential facts on which the corporate entity will be disregarded is necessarily impossible beyond such categories as (a) fraud, (b) contravention of statute or law, (c) contravention of contract, (d) equitable titles or rights, (e) internal corporate transactions among all shareholders or members where third persons are not involved, (f) mere agencies and undisclosed principalships, and the like." See, 13 Am. Jur., Corporations, sec. 7.

In *Home Fire Ins. Co. v. Barber,* 93 N.W. 1024, the facts, in brief, were these: An individual purchased all of a corporation's outstanding capital stock, the sellers being stockholders, directors and officers of the corporation. After ownership and control had passed to the purchaser, a suit was brought by the corporation to recover from one of the sellers on the ground of alleged prior mismanagement of the corporation's affairs. Upon the premise that stockholders who acquire their shares and interest in the corporation from the alleged wrongdoer have no standing to complain thereof, (with which we are not concerned,) the court, opinion by *Pound, C.,* says: "Conceding, then, that all of the present stockholders are so circumstanced that no relief should be afforded them in a court of

equity, may the corporation recover, notwithstanding? We think not. Where a corporation is not asserting or endeavoring to protect a title to property, it can only maintain a suit in equity as the representative of its stockholders. If they have no standing in equity to entitle them to the relief sought for their benefit, they cannot obtain such relief through the corporation or in its own name. (Citations) It would be a reproach to courts of equity if this were not so. If a court of equity could not look behind the corporation to the shareholders, who are the real and substantial beneficiaries, and ascertain whether these ultimate beneficiaries of the relief it is asked to grant have any standing to demand it, the maxim that equity looks to the substance, and not the form, would be very much limited in its application. 'It is the province and delight of equity to brush away mere forms of law.' *Post, J.,* in *Fitzgerald v. Fitzgerald & Mallory Construction Company,* 44 Neb. 463, 492, 62 N.W. 899. Nowhere is it more necessary for courts of equity to adhere steadfastly to this maxim, and avoid the danger of allowing their remedies to be abused, by penetrating all legal fictions and disguises, than in the complex relations growing out of corporate affairs. Accordingly, courts and textwriters have been in entire agreement that equity will look behind the corporate entity, and consider who are the real and substantial parties in interest, whenever it becomes necessary to do so to promote justice or obviate inequitable results."

The distinguished jurist, (later known to us as Dean Pound), concludes: "To permit persons to recover through the medium of a court of equity that to which they are not entitled, simply because the nominal recovery is by a distinct person through whom they receive the whole actual and substantial benefit, and that nominal person would, in ordinary cases, as representing beneficiaries having a right to recover, be entitled to relief, is perversion of equity. It turns principles meant to do justice into rules to be administered strictly without regard to the result. It is contrary to the very genius of equity. When the corporation comes into equity and seeks equitable relief, we ought to look at the substance of the proceeding, and, if the beneficiaries of the judgment sought have no standing in equity to recover, we ought not to become befogged by the fiction of corporate individuality, and apply the principles of equity to reach an inequitable result."

"Thus it has been held that where a corporation was but the instrumentality through which an individual for convenience transacted his business, all of the authorities, not only equity, but the law itself, would hold such a corporation bound as the owner of the corporation might be bound, or conversely, hold the owner bound by acts which bound his corporation. *Llewellyn Iron Works v. Abbott Kinney Co.,* 172 Cal. 210, 214, 155 P. 986; *Industrial Research Corp. v. General Motors Corp.* (D.C.) 29

16—241

F. (2d) 623, 625. In the case of *Clark v. Millsap,* 197 Cal. 765, 782, 242 P. 918, 925, the Court states: 'The doctrine of corporate entity is not so sacred that a court of equity will hesitate to look through form to the substance of the thing, and it may, in proper cases, ignore it to preserve the rights of persons imposed upon or circumvented by fraud. In such cases, corporate fiction is disregarded.' That this rule is not limited to equity is clearly stated in *Llewellyn Iron Works v. Abbott Kinney Co., supra,* and the cases there cited." *Mirabito v. San Francisco Dairy Co.,* 47 P. 2d 530 (Cal. 1935).

In North Carolina, legal and equitable rights and remedies are determined in one and the same action. Constitution of N. C., Art. IV, sec. 1; *Reynolds v. Reynolds,* 208 N.C. 578, 182 S.E. 341.

The foregoing principles have been applied to diverse factual situations in a multiplicity of cases in other jurisdictions. It is generally accepted that "disregarding corporate entity" does not connote that the corporation has ceased to exist. Nor will corporate entity be disregarded when to do so would prejudice the corporation's creditors or other third parties. It is fundamental that the court will look behind the corporate entity only in relation to the facts of an appropriate case and to further the ends of justice.

If it should appear, when the evidence is developed, that McLean would be the beneficiary of any recovery by the corporation herein, the corporation in such case would in reality, prompted by McLean's ownership and control, be acting as his device, instrument or agency to reap for him an unjust gain. A court of equity should not permit the concept of corporate entity to aid him in such conduct.

It should be noted, however, that we are concerned now only with pleadings. The evidence, of course, may cast a different light both upon the questions presented and the legal principles applicable thereto.

In my view, the challenged allegations are relevant. The defense, in substance, is that the plaintiff cannot maintain this action because McLean, the beneficiary of the recovery, has contracted that such claim will not be made. Unless McLean is barred, the corporation is not barred. Hence, it seems to me that McLean is a necessary party. Therefore, I would reverse the ruling striking the challenged allegations and remand the cause with instructions that McLean be made a party.

JOHNSON, J., concurs in dissent.